UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VERETTA BURNETT,

    Plaintiff/Counterdefendant,

v.

CITY OF HIGHLAND PARK and
BRENDA STEVENSON, in her individual
and official capacities,

    Defendants/Counterplaintiffs.
_____/

CASE NO. 09-14238

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING PLAINTIFF/COUNTERDEFENDANT'S
MOTION FOR SUMMARY JUDGMENT, AND GRANTING IN PART, AND
DENYING IN PART DEFENDANTS/COUNTERPLAINTIFFS'
CROSS MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on Defendants/Counterplaintiffs City of Highland Park ("City") and Officer Brenda Stevenson's ("Stevenson") Motion for Summary Judgment (Doc. No. 46), and Plaintiff/Counterdefendant Veretta Burnett's ("Burnett") Motion for Summary Judgment (Doc. No. 48). The Court heard oral argument on October 13, 2011, and took this matter under advisement. For the reasons that follow, the Court **GRANTS** Burnett's Motion for Summary Judgment and **GRANTS IN PART** and **DENIES IN PART** Stevenson and the City's Motion for Summary Judgment.

**I.    STATEMENT OF FACTS AND PROCEDURAL POSTURE**

On November 5, 2007, Burnett was involved in an altercation with residents of her apartment building. Thereafter, she dialed 911 and flagged down Officer James Lant of the Highland Park Police Department, who happened to be driving near the apartment building. (Doc. No. 48-5, at 9-11). Burnett told Lant that four individuals

assaulted her and kicked her in the face. (Id.). Lant and Burnett returned to the scene of the incident, where Lant observed a woman bleeding from a head wound. Upon further investigation, two back-up officers arrested Burnett for attacking the woman with a knife and transported Burnett to the Highland Park police station. (Doc. No. 48-7, at 9).

Burnett arrived at the police station between 2:20 p.m. and 2:40 p.m., during a shift change. (Doc. No. 48-7, at 12). At that time, Sergeant Brenda Stevenson was the officer in charge. Stevenson contends that Burnett caused a disturbance by screaming that she was the victim of an assault, that she was kicked in the head and punched in the stomach, and that someone had to pick up her child from school. (Doc. No. 52, at 2). At the police station, an officer handcuffed one of Burnett's hands to a chair located outside the station's only cell. Because the cell was used only for male detainees, the standard practice was to handcuff women outside of that cell.

The parties dispute what happened next. Stevenson alleges that Burnett was loud, uncooperative, and even attempted to flee toward the back door of the police station. (Id. at 3). Burnett does not deny moving the chair to which she was handcuffed, but asserts that she was not trying to flee. Eventually, Burnett was uncuffed from the chair and both hands were then cuffed to the outside of the cell. (Doc. No. 48-5, 20-21). Stevenson contends that this was necessary to prevent Burnett from escaping. Stevenson further asserts that it was necessary to handcuff both of Burnett's hands to the cell because she was being unruly, and had even taken off her pants and attempted to urinate on the floor. Burnett does not dispute that she lowered her pants, but claims that she asked to use the bathroom, and her request was denied.

According to Burnett, while handcuffed to the cell, Stevenson punched her in the face multiple times for no apparent reason. (Doc. No. 48, at 8). Lant, who was at his desk compiling paperwork, testified that he heard what sounded like fist on flesh, and he came to the area where Burnett was located. (Doc. No. 48-5, at 23). After Burnett told him that Stevenson struck her, he took pictures of Burnett's face. (Doc. No. 48-5, at 26-27). A detainee confirmed witnessing Stevenson assault Burnett (Doc. No. 48-10), and another detainee stated that he did not see Stevenson punch Burnett, but he saw what seemed to be Stevenson swinging her fist (Doc. No. 48-11).

After the alleged assault, Burnett claims that she asked multiple times to go to the hospital, but it was not until the next day that the police department granted her request. Facial bone x-rays came back negative, but Burnett received antibiotics for urinary tract problems. Burnett remained in police custody awaiting arraignment, and when she returned to the Highland Park Police Department, she was placed back in the jail because she could not make bond.

Burnett eventually contacted the FBI about the incident, and the FBI conducted an independent investigation. Subsequent to the investigation, Stevenson was indicted by a grand jury. At trial, however, a jury acquitted Stevenson of all charges.

On October 29, 2009, Burnett filed this civil action alleging a deprivation of her constitutional rights and various state law claims. Subsequently, on March 29, 2010, Stevenson filed a counterclaim for malicious prosecution and intentional infliction of emotional distress.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact if there is not a factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. In determining whether to grant summary judgment, the Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, to avoid summary judgment, the non-movant must present significantly probative evidence. Anderson, 477 U.S. at 249-50. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Id. at 247-48.

### III.     ANALYSIS

Burnett's complaint alleges constitutional deprivations pursuant to 42 U.S.C. § 1983, as well as state law violations. The Court addresses the federal and state law claims separately. Finally, the Court addresses Stevenson's counterclaims.

#### A. Burnett's Federal Law Claims

To bring a claim under 42 U.S.C. § 1983, facts must be set forth and "establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." Miller v. Sanilac Cnty., 606 F.3d 240, 247 (6th Cir. 2010) (internal citation omitted). There is no dispute as to the second element, as Stevenson is a police officer who was acting under color of state law. Accordingly, the Court's analysis is limited to the first element. Burnett alleges that Officer Stevenson used excessive force in handcuffing both of her hands to the cell at the police station while punching her in the face multiple times. She further asserts that she was not provided medical attention until twenty-four hours after arriving at the police station, amounting to a violation of the Eighth Amendment. In addition, the parties disagree as to whether the City or Stevenson has immunity for Stevenson's actions.

#### 1. Excessive Force

The parties dispute whether Burnett has presented a genuine dispute of material fact as to whether Stevenson used excessive force. As Burnett was a pretrial detainee at the time of the alleged altercation, the Fourteenth Amendment governs her excessive force claim. See Aldini v. Johnson, 609 F.3d 858, 865 (6th Cir. 2010). Under the Fourteenth Amendment, an officer may not use excessive force that amounts to punishment. Id. (citing Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)). In addition,

5

the Sixth Circuit has held that in order to violate the Fourteenth Amendment, an officer's conduct must "shock the conscience." Harris v. City of Circleville, 583 F.3d 356, 365 (6th Cir. 2009). In essence, the central inquiry is whether the officer maliciously and sadistically used the force for the very purpose of causing harm. Darrah v. City of Oak Park, 255 F.3d 301, 307 (6th Cir. 2001).

Burnett has provided evidence establishing a genuine issue of material fact as to the level of force that Stevenson used. Although Stevenson asserts that any force used was necessary in the situation, Burnett testified that Stevenson intentionally punched her in the face. In Pelfrey v. Chambers, 43 F.3d 1034 (6th Cir. 1995), the court analyzed an excessive force claim arising under the Eighth Amendment. The court found that the plaintiff/prisoner stated a cognizable claim of excessive force based on the actions of two officers who allegedly held the prisoner's hands behind his back, while cutting his hair, and laughing at him. Id. at 1037. In Hardy v. Vieta, No. 05-1024, 2006 WL 891088 (6th Cir. April 4, 2006), the court allowed a prisoner to bring a claim for excessive force when an officer pushed a steel door onto him. Although these cases were analyzed under the Eighth Amendment, the Fourteenth Amendment provides at least an equal level of protection to pretrial detainees. See Griffin v. Hardrick, 604 F.3d 949, 953 (6th Cir. 2010) ("The law is unsettled as to whether the analysis for a Fourteenth Amendment excessive-force claim and an Eighth Amendment excessive-force claim is the same.") (internal citation omitted). It would be illogical to afford greater protection to individuals convicted of crimes than a pretrial detainee. See Wilson v. Williams, 83 F.3d 870, 875 (7th Cir. 1996) (reasoning that the Fourteenth

6

Amendment arguably affords a higher standard than that provided in the Eighth Amendment).

Here, the parties' claims are contradictory and a genuine issue of material fact exists as to whether Stevenson reasonably responded to an immediate threat or used force maliciously and sadistically for the very purpose of hurting Burnett. Stevenson's alleged use of force is comparable to the amount of force alleged to have been used in Pelfrey and Hardy, where the court held that the plaintiffs had made out a cognizable constitutional claim of excessive force. A reasonable jury may conclude that Stevenson's conduct "shocks the conscience." Therefore, the excessive force claim cannot be dismissed under Fed. R. Civ. P. 56.

### 2. Deliberate Indifference to a Medical Need

The parties contest whether Burnett has presented evidence to show that Stevenson and other officers may have been deliberately indifferent to her medical needs. Pretrial detainees have a Fourteenth Amendment right to adequate medical treatment, and this right is analogous to the right of prisoners under the Eighth Amendment. Watkins v. City of Battle Creek, 273 F.3d 682, 685-86 (6th Cir. 2001). A claim of deliberate indifference requires objective proof that the plaintiff had a serious medical need. Wilson v. Seiter, 501 U.S. 294, 297 (1991). One way the plaintiff can prove a serious medical need is by showing that her need was "obvious even to a lay person." Johnson v. Karnes, 398 F.3d 868, 874 (6th Cir. 2005) (quoting Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 899 (6th Cir. 2004)). Moreover, the plaintiff must show that the defendant "subjectively perceived a risk of harm and then disregarded it." Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001). Medical care must be "so

grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miller v. Calhoun Cnty., 408 F.3d 803, 819 (6th Cir. 2005) (internal citation omitted).

The Court is convinced by looking at the pictures of Burnett's face that a reasonable jury could find that the objective element of her deliberate indifference claim has been met. It is obvious, even to a lay person, that after being punched in the face, a person may suffer broken facial bones that require immediate treatment. Thus, a jury may very well conclude that Stevenson and other officers consciously disregarded Burnett's immediate need for medical attention. Therefore, the deliberate indifference claim cannot be resolved on summary judgment.

### 3. Immunity

Stevenson and the City argue that they are entitled to immunity for Burnett's state law claims. The Court analyzes Defendants' arguments separately because different standards apply to Stevenson and the City.

#### a. Stevenson's Immunity

A police officer is entitled to qualified immunity if his or her conduct does "not violate clearly established statutory or constitutional rights which the reasonable officer in the defendant[']s position would have known." Kostzewa v. City of Troy, 247 F.3d 633, 641 (6th Cir. 2001). Whether a defendant receives the benefit of qualified immunity is a question of law for the trial court to resolve. Virgili v. Gilbert, 272 F.3d 391, 392 (6th Cir. 2001).

Taken in a light most favorable to Burnett, the facts as alleged show that Stevenson's conduct violated Burnett's clearly established constitutional rights. See

Scott v. Harris, 550 U.S. 372, 377 (2007). The right to be free from excessive force is a clearly established constitutional right. See Kostzewa, 247 F.3d at 641. Similarly, since at least 1972, it has been established that "where the circumstances are clearly sufficient to indicate the need of medical attention for injury or illness, the denial of such aid constitutes the deprivation of constitutional due process." Estate of Carter v. City of Detroit, 408 F.3d 305, 313 (6th Cir. 2005) (internal citations omitted); see also Heflin v. Stewart Cnty., 958 F.2d 709, 717 (6th Cir. 1992) (holding that a pretrial detainee's right to medical treatment has been established since at least 1987). Because the relevant conduct occurred in her capacity as a police officer, Stevenson was acting under color of state law and is not shielded by qualified immunity.

### b. City's Immunity

As previously stated, to bring a claim under 42 U.S.C. § 1983, a "plaintiff must properly allege two elements: (1) the defendant was acting under color of state law, and (2) the offending conduct deprived the plaintiff of rights secured under federal law." Mezibov v. Allen, 411 F.3d 712 (6th Cir. 2005) (citation omitted). A municipality, however, may not be held liable under 42 U.S.C. § 1983 based on the theory of respondeat superior. Board of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 403 (1997). Rather, to establish municipality liability under 42 U.S.C. § 1983, a plaintiff must: (1) identify a municipal policy or custom; (2) connect the policy to the municipality; and (3) show that his or her particular injury was incurred due to the extension of that policy. Alkire v. Irving, 330 F.3d 802 (6th Cir. 2003). Furthermore, municipal liability can attach for a failure to train employees if the plaintiff can demonstrate that, prior to the occurrence of an injury, the municipality was put on notice

of the likelihood of injury. Brown, 520 U.S. at 407. In essence, a systematic failure to train police officers amounts to a custom or policy that can lead to municipal liability. Gregory v. City of Louisville, 444 F.3d 725, 753 (6th Cir. 2006) (internal citation omitted).

Burnett has provided sufficient evidence to establish that the City may have been on notice that it needed to implement a use of force training program. Indeed, she has provided evidence that the City did not have a use of force training policy in place at the time of the alleged incident and that Stevenson was named in a prior lawsuit for use of excessive force. Proof of a single deprivation can substantiate an inference of prior knowledge on behalf of the City. Brown, 520 U.S. at 409 ("[E]vidence of a single violation of federal rights accompanied by a showing that a municipality has failed to train its employees to handle recurring situations preventing an obvious potential for such a violation, could trigger municipal liability."). A reasonable jury can conclude that the City was deliberately indifferent as to whether injury would result from its failure to provide use of force training. See Fisher v. Harden, 398 F.3d 837, 849 (6th Cir. 2005) (reasoning that deliberate indifference is established by a plaintiff showing prior instances of unconstitutional conduct ignored by the city); see also Jones v. City of Cincinnati, 521 F.3d 555, 560-61 (6th Cir. 2008) (holding that the district court did not err in denying summary judgment to city because plaintiff alleged city had inadequate use of force training). "[C]ontinued adherence to an approach that [the municipality] know[s] or should know has failed to prevent tortious conduct by employees may establish conscious disregard for the consequences of their action—the "deliberate

indifference"—necessary to trigger municipal liability." Brown, 520 U.S. at 407. Thus, the City is not entitled to immunity on the excessive force claim.

The City, however, is entitled to immunity on the deliberate indifference claim. Here, Burnett has failed to carry her burden on summary judgment. She did not provide any evidence that the City had notice that its officers were inadequately trained to handle prisoners' medical needs. Instead, Burnett makes a blanket assertion that because the City failed to supervise, review, or discipline its officers, Stevenson was deliberately indifferent to Burnett's medical needs. This, alone, is not enough to show that the City was put on notice and acted with the "deliberate indifference" necessary to trigger municipal liability. Jones, 521 F.3d at 561 (reasoning that plaintiff introduced evidence dealing with medical care of suspects in order to allow claim against city); see also Gray v. City of Detroit, 399 F.3d 612, 618 n.1 (6th Cir. 2005) (citing Molton v. City of Cleveland, 839 F.2d 240, 247 (6th Cir. 1988) ("Deliberate indifference remains distinct from mere negligence."). Burnett cannot point to a specific event or sequence of events that may have put the City on notice of inadequate training regarding the medical needs of detainees. See Cherrington v. Skeeter, 344 F.3d 631, 645-46 (6th Cir. 2003) (To find a municipality liable under § 1983, there must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.") (internal citations omitted). Therefore, the City is immune from suit for deliberate indifference to Burnett's medical needs.

In sum, the court finds a genuine issue of material fact exists as to whether excessive force was used and whether Stevenson was deliberately indifferent to Burnett's medical needs. Therefore, Stevenson's request for judgment on the

excessive force and deliberate indifference claims is denied.  Further, Stevenson is not entitled to qualified immunity.  Moreover, the Court finds that the City is not immune from suit on the excessive force claim because Burnett has presented evidence that the City may have been put on notice that it needed to provide its officers with use of force training.  However, Burnett has not provided any evidence that the City inadequately trained its employees to address medical needs of prisoners; thus, the City is immune from suit for the deliberate indifference claim.

### B. Burnett's State Law Claims

Burnett alleges state law claims of assault and battery and gross negligence. The City and Stevenson contend that they are entitled to governmental immunity on both claims under the Michigan Governmental Immunity Act.  The Court discusses the arguments below.

#### 1. Assault and Battery & Gross Negligence

Essentially, Burnett's claims of assault and battery and gross negligence arise out of Stevenson's alleged use of excessive force.  Thus, Burnett may not properly list gross negligence as a separate cause of action.[1]  See Bletz v. Gribble, 641 F.3d 743, 757 (6th Cir. 2011) (refusing to transform an excessive force claim into a claim of gross negligence).  Instead, "[t]he only cause of action available to plaintiff for allegations of this nature would be for assault and battery." Id. (internal citations omitted).

The Court finds that there is a question of material fact in determining whether Stevenson is liable for assault and battery under Michigan law.  Under Michigan law, an

---

[1] Although Burnett may not properly list gross negligence as a separate cause of action, it remains important in regards to the immunity analysis.  A governmental employee is not liable for actions that do not amount to gross negligence.  See Mich. Comp. Laws § 691.1407.

assault is defined as an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent ability to accomplish." VanVorous v. Burmeister, 687 N.W.2d 132, 142 (Mich. Ct. App. 2004). A battery is "an unintentional, unconsented and harmful or offensive touching of the person of another, or of something closely connected with the person." Grawey v. Drury, 567 F.3d 302, 315 (6th Cir. 2009) (internal citations omitted).

Here, viewed in the light most favorable to Burnett, Stevenson's alleged actions constitute assault and battery. Although Stevenson denies punching Burnett in the face, Burnett asserts that Stevenson punched her in the face multiple times while she was handcuffed to the cell. Accordingly, a jury must resolve the factual dispute.

### 2. Michigan Governmental Immunity Act

Stevenson and the City both argue that they cannot be liable for assault and battery because they are immune under the Michigan Tort Liability Act. See Mich. Comp. Laws § 691.1407.

#### a. Stevenson's Immunity

Stevenson is not entitled to immunity under the Michigan Tort Liability Act because Burnett has established a genuine issue of material fact as to the assault and battery claim. Under Michigan's Tort Liability Act, a governmental employee is not liable for personal injuries sounding in tort provided the employee's "conduct does not amount to gross negligence that is the proximate cause of the injury or damage." Id. § 691.1407(2)(c). The act defines gross negligence as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Id. §

691.1407(7)(a). Moreover, a governmental employee may be entitled to qualified immunity for an intentional tort if "(1) the employee's challenged acts were undertaken during the course of employment and . . . the employee was acting, or reasonably believed he was acting, within the scope of his authority; (2) the acts were undertaken in good faith; and (3) the acts were discretionary, rather than ministerial, in nature." Odom v. Wayne Cnty., 760 N.W.2d 217, 218 (Mich. 2008). Where reasonable minds can differ whether an official acted in good faith, the question is one of fact for the jury to resolve. See Flones v. Dalman, 502 N.W.2d 725, 728 (Mich. Ct. App. 1993) ("Whether a tortfeasor acted in good faith is a question of fact that is generally left to the jury.") (citation omitted).

Looking at the facts in a light most favorable to Burnett, the Court finds that a fact question exists as to whether Stevenson acted in good faith. Furthermore, even if Stevenson acted in good faith, there is a fact question as to whether she was grossly negligent. Stevenson claims that she had to restrain Burnett to prevent her from escaping from the police station. Burnett claims that Stevenson had her handcuffed to the cell and proceeded to punch her in the face multiple times while she was defenseless. The act of assault and battery requires an intentional use of unlawful force and surpasses the gross negligence standard. Thus, the Court finds that reasonable minds can differ whether Stevenson's actions rose to the level of gross negligence, leaving the question of immunity for the jury to resolve. See Oliver, 715 N.W.2d 314.

### b. The City's Immunity

If an officer's actions do not rise to the level of gross negligence, the municipality still may be vicariously liable based on the doctrine of respondeat superior. However, a

governmental agency can be held liable "only when its officer, employee, or agent, acting during the course of employment and within the scope of authority, commits a tort while engaged in an activity which is nongovernmental or proprietary, or which falls within a statutory exception." Ross v. Consumers Power Co., 363 N.W.2d 641, 647 (Mich. 1984); see also Booker v. Detroit Public Schools, No. 290071, WL 1052275, at *2 (Mich. Ct. App. 2010) (reasoning that a court must look at the activity the official was engaged in).

The most recent test used by the Michigan Supreme Court in determining whether an activity is a "governmental function" looks at whether the activity is expressly or impliedly mandated or authorized by constitution, statute, or other law. Ross, 363 N.W.2d at 661; see also Mich. Comp. Laws § 691.1401(f). Improper performance of an activity authorized by law is still authorized for the purposes of the governmental function test. Richardson v.Jackson Cnty., 443 N.W.2d 105 (Mich. 1989). Indeed, a municipality will only be liable if its employee is engaged in an activity that the municipality lacks legal authority to perform. Id.

Here, the City is immune from liability because Stevenson was engaged in a governmental activity at the time of the alleged assault and battery. Stevenson was employed at the police station and her duties on the day of the incident included monitoring and supervising pretrial detainees. This function is clearly a governmental activity, and the City has immunity for Burnett's state law claim of assault and battery. See Mack v. City of Detroit, 649 N.W.2d 47 (Mich. 2002) (reasoning that the management, operation, and control of a police department is a "governmental function" under the Michigan Tort Liability Act).

In sum, the Court finds that Burnett has provided sufficient evidence to proceed on her assault and battery claim. However, the City is immune from suit under state law, and Burnett may only proceed against Stevenson.

### C. Stevenson's Counterclaims

Burnett seeks summary judgment on Stevenson's counterclaims for malicious prosecution and intentional infliction of emotional distress.

#### 1. Malicious Prosecution

Under Michigan law, a claim for malicious prosecution requires a plaintiff to prove four elements: "(1) that the defendant has initiated a criminal prosecution against the plaintiff; (2) that the criminal proceedings terminated in the plaintiff's favor; (3) that the private person who instituted or maintained the prosecution lacked probable cause for his or her actions; and (4) that the action was undertaken with malice or a purpose in instituting the criminal claim other than bringing the offender to justice." Peterson Novelties, Inc. v. City of Berkley, 672 N.W.2d 351, 363 (Mich. Ct. App. 2003) (internal citations omitted).

Probable cause is established where a complaining witness fully, fairly, and in good faith states all material facts within his or her knowledge to a prosecutor, who proceeds to recommend a warrant for arrest in the initiation of a prosecution. Markowicz v. Papps, 300 N.W.2d 713, 716 (1980); see also Matthews v. Blue Cross and Blue Shield of Mich., 572 N.W.2d 603, 613 (Mich. 1998). Here, Stevenson's only evidence that Burnett lacked probable cause is Stevenson's own assertion that Burnett lied to the FBI about what happened to her. Burnett provided photos, pretrial detainee witness statements, and police officer witness statements supporting the fact that she

was assaulted. Stevenson's mere assertion that Burnett is a liar is not enough to satisfy her burden on summary judgment. See Matsushita Elec. Indus. Co., 475 U.S. at 487. Consequently, looking at the facts in a light most favorable to Stevenson, Burnett's Motion for Summary Judgment is granted.

### 2. Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress, a plaintiff must show: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. Linebough, 497 N.W.2d at 588; see also Chavez v. Waterford Sch. Dist., No. 09-12336, 2010 WL 2474791 (E.D. Mich. 2010) (applying Michigan law). Liability will attach only when the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Dalley v. Dykema Gossett, 788 N.W.2d 679, 694 (Mich. Ct. App. 2010) (internal citations omitted). A defendant is not liable for "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Doe v. Mills, 536 N.W.2d 824, 833-34 (Mich. Ct. App. 1995) (citing Linebough 497, N.W.2d 585). Rather, recovery is generally limited to instances "in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" Id. at 834 (citing Roberts v. Auto-Owners Ins. Co., 374 N.W.2d 905 (1985)).

Upon review of all the evidence, the Court finds there is no genuine issue of material fact on the extreme and outrageous element. Indeed, Burnett merely sought

legally permissible recourse for Stevenson's alleged actions. Where emotional distress results from the insistence of a person's legal rights in a permissible way, the conduct is not considered extreme and outrageous, even if he or she knew that such action would cause emotional distress. DeCoe v. Gen. Motors Corp., 32 F.3d 212 (6th Cir. 1994) ("[a] defendant has not acted outrageously 'where he has done no more than to insist upon his legal rights in a permissible way, even though he was well aware that such insistence [wa]s certain to cause emotional distress.'") (internal citations omitted); Sankar v. Detroit Bd. of Educ., 409 N.W.2d 213 (Mich. Ct. App. 1987) (same); Various Markets, Inc. v. Chase Manhattan Bank, N.A., 908 F. Supp. 459, 468 (E.D. Mich. 1995) (reasoning that the filing of a suit to establish a claim, whether ultimately determined to be well founded or not, does not in itself show imposition of wrongful duress).

Accordingly, the Court finds that Stevenson has failed to carry her burden in establishing an existence of a material fact for either cause of action. Therefore, summary judgment on both counterclaims is appropriate.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Stevenson and the City's Motion for Summary Judgment, and **GRANTS** Burnett's Motion for Summary Judgment. Specifically, the Court grants the City's request to award it judgment on the deliberate indifference claim and denies Stevenson's request for judgment on both the deliberate indifference and assault and battery claims. Furthermore, the Court denies both Stevenson and the City's request for judgment as to the excessive force claim. Finally, the Court grants Burnett's request for judgment on the malicious prosecution and intentional infliction of emotional distress claims.

**IT IS SO ORDERED.**

                                              s/Marianne O. Battani
                                              MARIANNE O. BATTANI
                                              UNITED STATES DISTRICT JUDGE

DATE: October 28, 2011

### CERTIFICATE OF SERVICE

    I hereby certify that on the above date a copy of this Opinion and Order was served upon all Counsel of record via the Court's ECF System.

                                              s/Bernadette M. Thebolt
                                              Case Manager